The United States Court of Appeals for the First Circuit is now in session. All persons having any business before this honorable court may give their attendance and they shall be heard. God save the United States of America and this honorable court. Court is in session. Today's cases will be called as previously announced and the times will be as allotted to counsel. The first case today is United States v. George Royle V. Appeal No. 20-2143. Attorney Mermin, please reintroduce yourself for the record and proceed with your argument. Good morning. John Mermin, representing George Royle. I'd like to reserve two minutes for rebuttal, please, if I could. Yes, Mr. Mermin. Thank you. I'd like to go straight to the illegal search that affected the decision to seek the warrant that led to the seizure of the key piece of evidence in this case. A federal law enforcement officer, Agent Fife, had a plan to get a warrant to search a house my client owned for a computer that he believed had been used in connection with child pornography. Agent Fife was doing surveillance as part of his investigation and he saw something that for some reason gave him pause. What he saw was ordinary and unremarkable in a warm summer evening in this quiet neighborhood, an open main door behind a closed screen door. This was not unusual, not hard to explain, but Agent Fife, who was focused on his investigation and on whether the computer he believed was in that house was in fact there, reacted to this ordinary and unremarkable situation by doing something he had never done before in his law enforcement career. He called the Portland Police Department to conduct an illegal wellness check, that is, to search the house. The government claims this illegal search had nothing to do with Fife's criminal investigation, that he was just concerned that maybe there had been a burglary or some other incident. But what actually happened is that after the Portland Police searched the house, Fife had called them in to search and found nothing amiss. Fife then specifically asked if they had seen things that would not still be there if there had been a burglary. Didn't the district court specifically make a credibility finding that the detective, or whatever his rank was, didn't ask the Portland Police to actually enter the home? Your Honor, our position is that it is simply, well, didn't ask the Portland Police to enter the home. I don't believe he made that specific finding. The record, the evidence is from the report of the call to the police that they were asked to do a run through the house, is what the CAD report says. To the extent, Your Honor, that the district court found Agent Fife's story credible, our position is that it's just not reasonable. It's not plausible that he would have seen this completely unremarkable thing, the open main door behind the closed screen door, and reacted to it as if there was something that needed the police to come in. Mr. Mermin, I'm having trouble following this aspect of your argument. You're not saying that prior to the confirmatory search, he lacked probable cause, are you? No, we're not saying that. Okay, and then you're also not saying that there was, in fact, any reason to believe probable cause had been extinguished by the presence of the open door. Well, we're saying that Agent Fife apparently believed, became concerned at probable cause. Right, but that, I thought there was a credibility finding by the district court that he was not. Well, I'm not sure exactly what the district court, our position again is that that is just not, it's just not a reasonable, it's not plausible. No, well, the relevant question is, you're making the argument that subjectively he would not have sought the warrant once he saw the open door, even though he would have sought the warrant before he saw the open door, correct? Correct, that created a concern. And we have a finding by the district court saying that's not so, he would have sought it anyway, subjectively. Unless we think that was clearly erroneous, you lose, you agree with that, right? Yes, you do. So what about that finding is clearly erroneous, is it just, what in the record would we have to rely on to suggest that he wouldn't have, once he saw the open door, particularly when you emphasize how unremarkable and how little reason there was to be concerned that a burglary occurred. Why would we then not believe the idea that at most what he was doing was trying to augment the probable cause evidence that he already had. That's maybe very wrong of him to have done that, it doesn't show that he wouldn't have sought a warrant even without the confirmatory search. Well, I see what you're saying, your honor, but it's the very unremarkableness of the situation generating this response that leads us to conclude that there's no other explanation for why he would have. Why wouldn't the explanation be he wanted to have added evidence for the warrant, not that he wouldn't have sought it without that added evidence. Consider what would have happened if after this search occurred, he had approached the Portland police officers and they had said, well, there was no electronics in that house, didn't see any TVs, computers, any of that. Do you think he would have proceeded to get the warrant at that point? I would submit he would not have. But isn't the relevant question, I thought, was whether he would have sought the warrant without the confirmatory search, not whether he would have sought it after receiving that the search was not confirmatory. I think the relevant question is whether the search he conducted affected his decision to receive the warrant. Regardless of its outcome? And I think it clearly did affect his decision. Regardless of the outcome of the search? Yes, he conducted a search, one possible outcome of which would have been don't obtain the warrant. And the other outcome was, yes, go ahead with the original plan. But what evidence is there that he wouldn't have proceeded with the search? Well, again, Your Honor, I would I would submit that he's asked them to go see if there's basically to go see if there are electronics in this house. They come out and they if if they had come out and said, no, there are there are there's there's there's no electronics in this house. It looks like there was burglary. I think it's fairly self-evident he would not then have gone and gotten a warrant. Does your position mean that whenever a confirmatory search is sought automatically. The. Conclusion as to whether he would have sought it is resolved in favor of the defendant. No, I don't think so. I just think. Why not? Because you're saying it doesn't matter how much evidence he had to support it going forward. The minute he asked for the confirmatory search, he's risking a negative answer. So at that point, he's dependent on the outcome of the search. Therefore, it's tainted. That seems to be your life. Well, it's certainly my logic in this case. I hesitate to say that would always be the case without. How could it be different in any case on your logic? Because it's always possible that the outcome will be negative. At that point, you would say that doesn't have probable cause. So therefore, clearly, the search is confirmatory nature is what's supporting his decision to go forward. Oh, I guess this is why he should not have called for this confirmatory search. Or if he had, he should have. If he really thought there was a need for a wellness check, he should have separated himself from the search. Not talk to the officers after they came out. And I mean, that's what makes. Ask you one other point. You make a point about delay. And the delay having potentially prejudice, the ability to make the finding. Assuming we didn't agree with you that the mere asking of the confirmatory search means you win. And that it would depend on some assessment of. Is the credibility finding independent of that about whether he would have gone forward? You say the delay made it impossible to flum his motivation, the motivation of the other officers who could have confirmed it. What's the best authority you think we have for them? And obviously, if your claim is that there's a delay and therefore no one can remember what happened. Therefore, I can't put a proffer forward about what I could have shown. What's your best authority suggests that there's kind of almost a per se prejudice? Rule that applies when the delay in notification is as long as it was here. I'm not sure I can point you to specific authority. It just I would circle back to Murray, which puts an onerous burden on the government in this situation. To establish that the search did not affect the outcome, the decision to obtain a warrant. I'm sorry. And I would simply say that given that it's the government's onerous burden and my client is just put in an impossible position by having three years go by. And there's no opportunity for him. They have agent Fife. Fife says what he says. And there's really there's just no opportunity for my client to generate any other evidence based on that. So we're left simply with agent Fife's testimony. And that just seems fundamentally unfair. And given how easily they could have turned this over. Do we have a finding about what caused the delay? My understanding is that the delay was I mean, the government didn't feel it needed to turn this over. And they've said something, I think, about there were negotiations going on. And they they I don't know why. For some reason, they felt that it was appropriate to wait until there was an indictment. And I just don't I don't think that was appropriate at all. Let me ask if the panel has additional questions. I just had one council. You made an argument that the affidavit changed after the illegal entry. How? There were some minor changes to it. That's not central to that's not central to our argument, though. All right. Thank you. Thank you, Mr. If you would mute your audio and video. Mr. Pelletieri, if you would turn on your audio and video, we'll hear your argument. Thank you. Good morning. Good morning, Your Honors. I may have pleased the court, John Pelletieri, on behalf of the United States. The district court made a finding that the investigators here would have sought the search warrant to search Mr. Royal's home, even had there been no prior unconstitutional search, assuming that that search is unconstitutional. That's reviewed. Why wouldn't it be? What justifies that search? Well, we think that, generally speaking, the emergency aid exception could justify that search. But this court doesn't have to go into that. This court can simply apply the inevitable excuse me, the independent source doctrine and just assume that the search was unconstitutional and affirm on those grounds. The district court's ample evidence supported the district court's factual finding. And there's there's far, far, far sufficient evidence to conclude that there was no clear error. What's your what's your answer to your opponent's argument that if the. Outcome of the search of the home had been a representation that we couldn't find a computer in there, he would not have gone forward with the search. Well, we don't we think that the evidence contradicts that. What contradicts that? The agent said that he would have searched even if there hadn't been anything, if they hadn't viewed a computer, the search would have gone forward because, number one, there are any number of different types of storage devices that can contain child pornography. And, of course, the police officers may not have seen everything in the in the house, given the scope of their search, which was for a for a welfare check for an individual in there who may have needed just strong version of it. So suppose the outcome of the search had been looks like there was a computer that was taken because we just see a cord ripped off. Well, that's forward. Well, I mean, first of all, legally, it's not relevant because that's what I'm that's really what I want you to do. Why is the outcome of the search bear no relevance if the right inquiry depends in part on the subjective motivation of the officer who supposedly sought the confirmatory search? Because what you the inquiry is a counterfactual, which is what would have happened had there been no search here. And what would have happened is that Agent Fife would have seen those suspicious circumstances and there have been no entry into the house. And then we know that later, Mr. Royal would have returned home. There would have been no burglary reported. And the question is, well, under those circumstances, would the police. But the question is, does that question turn in part on the subjective motivation of the officer in part? Yes, this court has. So the question is, how can it be that when he asks for the search? He's not subjectively putting himself in a position where he wants to know what the outcome of it is before he'll go forward. How could it be otherwise? That's what I think the force of your opponent's point is. Well, for even in in Murray itself, the agents went in and they wanted they wanted to hold down the evidence while a search warrant was obtained. So that doesn't that doesn't preclude the inevitable discovery doctrine, because here what you're looking at. And I just want to be clear on the record, your honor. The the evidence did not support the conclusion that Agent Fife asked for a search. It's the record establishes that he called for a wellness check. He didn't have any expectation about what that wellness check would conclude, about whether it would include entry to the home. And that's corroborated by the testimony by the Portland police officers who said, number one, they were not directed to enter the home. And it was their call and their call alone to whether to enter the home. They hadn't even decided when they when they when they arrived, whether to enter the home. And they made that decision at the point they were on the precipice of the door. So the the and I think that the district court made factual findings to that effect, that the that Agent Fife was not actually asking for a search of the home. If that's a key point, how does the delay feature into the case? Because it would seem like. The delay would prejudice the ability to challenge that aspect of the plan. Your honor, there's no prejudice shown from any delay in this case. I mean, suppression determinations are commonly made after an indictment, years after the occurrences that take place. There's discovery. The attorneys conduct investigation. The district court holds a hearing hearing. The government has to make a finding by preponderance. The district court has to make findings that are reviewed for clear error. That's an everyday occurrence in court throughout the country. There's nothing unique about this case. And in fact, there's ample evidence in the record that had nothing to do with Agent Fife's testimony itself. There is. I think that's important. But you also have his contemporaneous memo, which corroborates what he what occurred and corroborates his recollection. You have contemporaneous emails between Agent Fife and the assistant U.S. attorney. You have the testimony of two police officers who conducted the wellness check. You have the testimony of Agent Fife's colleague in Homeland Security who was with him and also found these circumstances suspicious. You have an audio recording of the police officers as they went through the house. I mean, there was really quite a bit of evidence here that had nothing to do with Agent Fife's recollection. There's no prejudice shown. And I think that the closest analogy here would be to pre-indictment delay. And this court has concluded that just mere, perhaps memories that may have dissipated a little bit is not enough to show the type of prejudice for pre-indictment delay. And of course, there's no also no suggestion or allegation that the government engaged in any kind of impropriety here. So there's no first of all, there's no legal authority for the notion that there was any kind of legal error in the delay here or some sort of violation of any kind of constitutional rights for the timing of the disclosure here. But even if you assume that there was, there's no showing of any type of prejudice. Mr. Pelletieri, I'd like to ask you a question about the sufficiency claim. So we have Fife's testimony that it appeared to him that there was only one adult living in the house. And obviously there's evidence that Royal lived there. Is there anything else that the government offered in its case in chief to show that no other adults had access to the computer? Well, there's the evidence that Royal owned the home. He was the owner that the Internet service for the home was in his name. That when the police came to execute a search warrant at 740 a.m. in the morning, when the residents of a home would be present, only he was he was the only adult present. And he had two young children who are below the ages of 10. We know that he was divorced. And we know that his wife at 740 a.m. in the morning, as I said, when a resident of a home would be would be present, was not present and had to be called to come pick up the children. Then we know that Agent Fife testified that he walked through the house. He walked through every room and it appeared to him that only one adult lived in the home. Of course, that had to be Mr. Royal because he was the only adult. Was there any more detail to that statement? It appeared that only one person lived there. One adult lived there. Well, he testified that he went through the home and he entered every room to get a sense of the layout and a sense of the home. And he concluded that only one adult, based on what he saw, it appeared that one adult lived there. That's his testimony. So the answer to my question is no. There wasn't any other detail in that in that aspect of the testimony. But it's fully corroborated by everything else, your honor, which is the the owner of the home, the Internet service being registered to that individual. The the presence of only that individual as the adult at 740 a.m. in the morning. The fact that he's divorced, the fact that his ex-wife had to come over to get the children and wasn't doesn't live there. I think that that's ample evidence to support the reasonable inference that Mr. Royal is the only adult who lived in that home. And I think that it's and any any suggestion that another person had regular access to the home or the upstairs bedroom is purely speculative. I think the jury is entitled to to apply its common sense and make the reasonable inferences from the record. And ample evidence permitted the jury to conclude that only Mr. Royal resided in the home and had access to that upstairs bedroom. Thank you. Thank you. Other questions from the panel? All right. Thank you, Mr. Pelletieri. Thank you, your honor. If you would mute your audio and video. Mr. Merman, you've reserved a couple of minutes. Would you like to use them? Yes. Thank you, your honor. There is a document in the record, the C.A.D. report from the Portland Police, which says there was a call from Fife requesting a run through the house. And counsel was suggesting that there were plenty of other witnesses to what had happened. The witnesses remembered nothing about the key thing here, which is what was communicated to Fife, what Fife was interested in and asked about. So I would submit that the delay absolutely was prejudicial insofar as it made it impossible for us to get any other evidence of what Fife was doing there with that search. How do you square that with our case law about pre-indictment delay? How do I square it with the case law about pre-indictment delay? I mean, there's, you know, the time for indictment is, you know, that's controlled by statute of limitations. This is a different situation. This was an illegal search conducted in my client's home in the nighttime, and there was simply no reason why that could not be, should not have, should not, it should have been promptly disclosed, your honor. And there's nothing to do with statute of limitations or indictment. I'm just trying to get at the issue of prejudice. We've talked about delay alone not being prejudicial. Well, I mean, I guess sometimes with a delayed indictment, there's, I mean, sure, the problem of fading memories arises. But in this situation, it was completely unnecessary.  After they did this search, they should have disclosed it. And, I mean, there's just no need for this situation to exist. You're on mute, Judge Barron. Suppose you were not challenging the denial of the suppression motion here, and you were just independently seeking a dismissal of the indictment based on delayed, the delay based on, you know, fading memories. We would say, you know, fading memories about who else was in the house at those times or something like that. Presumably, you would lose on that under our case law. So I guess the question is, how can it be different with respect to the suppression motion, given that, obviously, there's not going to be any need for a suppression motion until there's an indictment. Right. But if the disclosure had been promptly made, we could have talked to people at the time and gotten their testimony, figured out what, while they still remembered it, what would have happened. Again, Your Honor, there's just, it should not have. How is that different from delay when there is a delay in the indictment itself? I mean, it's the same issues of faded memory, et cetera, lost evidence, possibly lost evidence that we've said isn't enough. Sure, but for better or worse, the law allows. It's the idea here that the thing that's not being disclosed is something the government alone would have known about early on. And then it's kept it from him. So that's an unusual circumstance. It's not just general fading of memories. It's the government has this information uniquely. He doesn't even know about it, but the government knows it the entirety of the time. Yes, Your Honor. Thank you. Yes. All right. Thank you. Dan, that concludes this one. Thank you. That concludes argument in this case. Attorney Mermin and Attorney Palateri, you should disconnect from the hearing at this time.